(39 App. Div. 466.)

# In re TALMAGE et al.

(Supreme Court, Appellate Division, First Department.　April 7, 1899.)

1. REFERENCES—APPEAL—QUESTIONS REVIEWABLE.

Under Gen. Rule Prac. No. 30, providing that, in references other than for the trial of issues in an action, the report shall stand confirmed, unless exceptions are filed, on appeal from the overruling of exceptions to a report on the accounting of an assignee only the exceptions are reviewable.

2. PARTNERSHIP—INTEREST OF DECEASED PARTNER—ASSIGNMENT — PRIORITIES.

A deceased partner's interest by his will was to remain in the firm for five years, when it was to be withdrawn. It was not withdrawn, but remained in the business until the firm's failure. Prior to the assignment, a bank, relying on a statement made by a partner in which the interests of the estate were included as capital, became a creditor of the partnership. On an accounting before a referee, the estate was adjudged a creditor, and there was no appeal from its confirmation. *Held,* that the bank's claim was not entitled to priority over that of the estate, nor to dividends accruing on the estate's interest, to the exclusion of the executors.

3. SAME—ESTOPPEL.

The executors of the estate are not estopped from asserting that its interest was not capital, since they neither represented to the bank that it was, nor authorized the firm, or any of its members, to so represent it, nor did they acquiesce therein.

4. ASSIGNEES' COMMISSIONS.

Under Laws 1877, c. 466, § 26, as amended by Laws 1878, c. 318, § 7, providing that an assignee shall have commissions on the whole sum which comes into his hands, an assignee who, with the consent of a creditor, sells property held by the latter as collateral, is entitled to commissions only on the surplus received for the assigned estate.

5. ACCOUNTING BY ASSIGNEE—CONFIRMATION OF REFEREE'S REPORT—COSTS AND ALLOWANCES.

On confirmation of a referee's report on an accounting of an assignee, the court may award counsel fees and costs, and determine who shall pay them, since the assignment act (Laws 1877, c. 466, § 26, as amended by Laws 1878, c. 318, § 7) so provides.

Appeal from special term.

Proceeding in the general assignment of John F. and Daniel Talmage, individually and as Dan Talmage's Sons, for the benefit of creditors. From a decree made on the accounting of Joseph Gillet, as assignee, Laura A. Talmage, individually and as executrix of the estate of Van Nest Talmage, deceased, Carrie F. Talmage, and others appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and McLAUGHLIN, JJ.

Hector M. Hitchings, for appellant Laura A. Talmage.
Melvin S. Palliser, for other appellants.
Theron G. Strong, for respondent assignee.
C. E. Rushmore, for respondent Manhattan Co.

BARRETT, J. We must first ascertain what are the precise questions brought up by this appeal. On the 4th day of September, 1897, Mr. Gillet filed an intermediate account of his proceedings as assignee. A citation was thereupon issued to all persons interested

in the assigned estate to attend the settlement of this account. Upon the return of the citation, the present parties and others appeared, and an order of reference was made to take and state the accounts of the assignee, and also to take proof and report as to what persons were entitled to share in the distribution of the assigned estate, and in what priority and proportion. The order further provided that "any party to this proceeding, and any creditor, may object to any claim presented before said referee not already adjudicated, and that the said referee shall thereupon take the proofs and report as to the validity of said contested claims." The reference thus ordered proceeded thereafter from time to time until May, 1898. Upon the 21st of the latter month, the referee's report was filed. Exceptions thereto were subsquently filed by the present appellants, and these exceptions came on for hearing at special term upon the 14th day of June, 1898. The exceptions were overruled, and on the 1st day of July, 1898, a decree was made confirming the referee's report and fixing the costs and allowances. It is from parts of the latter decree that this appeal is taken. We think it clear that the appeal brings up for review only the questions presented by these exceptions. This is a special proceeding, and the procedure is governed by rule 30 of the general rules of practice. That rule provides that, in references other than for the trial of the issues in an action, or for computing the amount due in foreclosure cases, the report, when filed, "shall become absolute and stand in all things confirmed, unless exceptions thereto are filed and served within eight days after service of notice of the filing of the same. If exceptions are filed and served within such time, the same may be brought to a hearing at any special term thereafter, on the notice of any party interested therein." As the reference here was not for the trial of the issues in an action, or for computing the amount due in a foreclosure case, the rule clearly applies. Subdivision 31 of rule 6, for the regulation of the special terms of the supreme court in the First judicial district, made by this appellate division, is in entire harmony with the general rule in question. This special rule relates only to the trial of a disputed claim, under section 26 of the general assignment act. It has no application to a reference upon an accounting by the assignee. Even as to the trial of a disputed claim, it simply absolves the special term from the duty of reviewing the referee, making the confirmation of the report a mere formality, and remitting the parties to this tribunal for the real review of the referee's decision.

Let us see, then, what findings are excepted to. The appellants have handed up a separate sheet, headed, "Questions Involved," in which they epitomize eight subjects, which, as they claim, are covered by their exceptions. We find, however, that but two of the questions presented to the referee are really brought up by these exceptions. One of these is the right of the Manhattan Company to priority of payment of its claim, as against the claim of Laura A. Talmage, executrix of Van Nest Talmage, deceased. The other is the right of the assignee to commissions upon so much of the moneys realized from the sale of certain goods, consisting of rice, as were

pledged to two banks. A brief analysis of these exceptions will suffice to make this conclusion clear. The first exception is to so much of the referee's fourth finding of fact as finds that "schedules of the assigned estate and of the liabilities of the assignors, prepared by the assignee," were filed, etc. This exception attempts to raise an entirely immaterial point. It is not of the slightest consequence, with respect to any material matter presented by this appeal, whether the schedules were prepared by the assignors or by the assignee. The second exception is to the referee's statement that no objection was taken to the rendition or value of the services of the assignee's attorneys, and that the only objection taken on that head was as to the propriety of the employment. This, too, is entirely immaterial, in view of the fact that there is no exception on either head. What we are to review is exceptions to the referee's findings, not to his observations as to the nature of the objections taken before him. There is no exception to the finding that the services were rendered, and that they were of the value stated. Nor is there an exception to the finding that such services were the proper subject of employment. Of what consequence, then, is the exception to the statement as to the character of the objections taken before the referee?. The other exceptions, however, are sufficient to raise the two questions already adverted to.

We shall consider first the contention of the Manhattan Company. That company had a claim against the assigned estate amounting, with interest, to $11,384.50. Miss Talmage, as executrix of Van Nest Talmage, also had a claim against the assigned estate of $67,769.50. Her claim grew out of the following facts: Van Nest Talmage was in his lifetime a member of the firm of Dan Talmage's Sons. He died in the year 1880, leaving a will, in which we find the following provisions:

"And whereas I am a member of the firm of Dan Talmage's Sons, of the city of New York, composed of my brothers, John F. Talmage and Daniel Talmage, and myself, and, as such, I am entitled to share in the assets and property of said firm, including an estimated value of my interest in certain real estate mentioned and described in the books of said firm, and it is my wish and desire that my executors shall not, for five years after my death, require payment from the survivors or survivor of said firm of my interest therein, or the moneys standing to my credit on the books of said firm, but that the same shall remain with the survivors and survivor of said firm, and bear interest at the rate of seven per cent. per annum for the period of five years, provided either of my two brothers above named shall so long live; * * * in order to carry out my intention, as above expressed, it is my will and desire that all sums of money which shall stand to my credit, at the time of my death, on the books of the said firm of Dan Talmage's Sons, and on the first day of January next after my death, and all my interest in said firm and its property and assets, shall remain with the survivors and survivor of said firm in case they or he shall continue the business thereof for the space of five years from my decease (in case my two brothers John and Daniel should so long live), they or he to pay interest thereon at the rate of seven per cent. per annum, payable quarter-yearly; and, at the expiration of said five years (or previously, in case both my said brothers should die before that time), the sums of money and assets which shall be due to and belong to my estate shall be withdrawn from the survivors or survivor of said firm, and placed on bond and mortgage, or otherwise securely invested, as hereinafter mentioned. In case the survivors or survivor of said firm should, however, decline to retain said moneys, and pay interest thereon, as above mentioned, and in the case

of the death of both my said brothers, then my executors shall collect and receive the money and assets belonging to my estate, and invest the same, as hereinafter directed, and apply the interest and income arising therefrom to the use of my wife during her natural life."

Mr. Van Nest Talmage's interest in the business was never actually withdrawn in specie from the firm conducted by the survivors. It was charged with losses during the period prior to the date after which the interest of the deceased was to remain with the survivors at interest; that is, down to the 1st day of January after his death. It was not thereafter charged with losses or credited with profits. During the following five years it remained with the firm at interest, as provided in the will. At the end of the five years, it was not withdrawn, as directed, but remained at interest, just as it had during the preceding five years, down to the time of the failure of the firm. The claim of the executrix was not included in the schedules, but she presented it to the assignee, and it was rejected. It was thereupon referred to Mr. Everitt P. Wheeler, as referee, to hear and determine the issues on that head between her and the assignee. These issues were tried before this learned referee, and he reported in favor of the executrix. He found as a fact that the amount which represented the interest of the deceased in the firm was, pursuant to the directions of the will, loaned by the estate to the firm for the period of five years, with interest, which interest was paid. He further found that, after the five years, payments were made, from time to time, by the firm, on account of interest "upon said loans, and that there was due to the said Laura A. Talmage, as executrix of Van Nest Talmage, deceased, from the said firm, and upon the said loans, on the 5th day of March, 1896, the sum of $67,769.50." The referee's conclusion was that the interest of Van Nest Talmage in the business of the firm ceased to be at the risk of the business on December 31, 1880; that his estate thus became a creditor of the firm; and that it thereafter continued to be such creditor down to the time when the assignment was made. Upon the 24th day of August, 1897, this report was confirmed, and the claim allowed as therein stated. No appeal was ever taken from the order of confirmation. Such was the situation when the present order of reference was made. Of the sum thus allowed by the referee, Wheeler, $49,123.87 represented the interest of Van Nest Talmage in the firm. The rest represented insurance and other moneys belonging to Mr. Talmage's estate which came into the hands of the firm after his death. It is conceded that these latter sums were debts due by the firm to Talmage's estate, and consequently that the Manhattan Company had no claim with respect thereto. The question under consideration, therefore, related solely to the $49,123.87. As to this the Manhattan Company contended—First, that Van Nest Talmage's interest remained in the firm as part of its capital, and consequently that the sum which represented it could not be a debt due by the firm; and, second, that, even if it were a debt due by the firm, they are entitled to receive the dividend thereon, to the exclusion of the executrix, and, indeed, to the exclusion of all the other creditors of the firm, until the full amount of their claim is paid. The latter contention is the one upon

which the Manhattan Company mainly relies. It could not well rely upon its first proposition, for the reason that the question of the status of the executrix with respect to her claim had already been, as we have seen, conclusively adjudicated. Indeed, the present order of reference, as will be observed, limited the right of a creditor, objecting to claims of other creditors presented to the referee, to those not already adjudicated. But, apart from that, neither the court nor the referee could reopen the question settled by the confirmation of Mr. Wheeler's report. That confirmation was a judgment in favor of Van Nest Talmage's estate, which was res adjudicata as to the assignee and the assigned estate. It was also binding upon the creditors represented by the assignee. It was, therefore, conclusive upon the present referee, and required him to find that the interest of Van Nest Talmage did not remain with the survivors after the 1st day of May, 1891, as capital of the firm; that on the contrary, the amount which represented that interest was thereafter loaned to the firm; and that the estate was a creditor of the assigned estate to the full amount of $49,123.87. Indeed, this is hardly gainsaid by the learned counsel for the Manhattan Company, as is apparent from the final words of his brief, as follows:

"Moreover, the position taken by the bank here is not hostile to the finding of the referee (Wheeler) that these claimants are creditors of the assignors; on the contrary, it is because they are creditors of the assignors that we are able to obtain relief as against them, by sharing in the dividends to which they are entitled."

It is thus the bank's second proposition with which we have to deal; and we must say that the reasoning in support of it seems quite extraordinary. That reasoning is substantially this: Although, as against the assigned estate and all the other creditors, Van Nest Talmage's interest never remained in the firm as capital after the 1st day of January, 1881 (it having been so conclusively adjudicated), yet, as against the bank, it did so remain, either in fact or by the estate's admission of the fact. The reasoning then proceeds in this wise: Van Nest Talmage's estate being in fact a creditor, and entitled to a dividend, the bank has become the equitable assignee of that dividend, or otherwise, through some undefined legal formula, entitled thereto, by force of the special facts which exist between it and that estate. What, then, are the special facts, according to the bank's contention, which effect this result? The first is that Van Nest Talmage's interest actually remained in the firm as capital. But that is directly antagonistic to the judgment upon Referee Wheeler's decision. The bank says:

"No, that judgment may be conclusive upon all parties, including ourselves, as to who are creditors; but it is not conclusive upon any special equities which may exist, as between creditors,—that is, as to whether the dividends payable to each shall ultimately go to one or the other."

Thus, Mr. Wheeler's decision, while binding primarily, is attacked secondarily. While we think that this decision is just as binding secondarily as it is primarily, we have no doubt that it was entirely sound in either aspect. After the 1st day of January, 1881, Van Nest Talmage's interest in the firm was, in legal contemplation, liq-

uidated. That was the effect of permitting it to remain under the provisions of the will. These provisions were never departed from, and the amount coming to the executrix remained with the survivors as a loan at interest. It is, however, contended that, although the fact may have been as thus pointed out, yet Van Nest Talmage's estate is, as between itself and the bank, estopped from asserting the truth, namely, the fact of the loan, or denying the untruth, namely, that the interest of the deceased remained as capital. The estate is thus estopped, the argument runs, because the bank advanced its money to the firm in reliance upon the latter's statement that its capital amounted, on the 9th day of June, 1894, to $181,218.48, and on the 25th day of February, 1895, to $184,639.01. Such a statement was made in writing to the bank by the firm, and it seems that the aggregate sums specified as capital—though no details were given— were in fact made up by the inclusion therein of the amount due to Van Nest Talmage's estate. It is difficult to see why the latter estate should thus be estopped. The fact was that the sum due to it was not capital of the firm; that the estate never represented to the bank, or to anyone else, that it was such capital; that it never authorized the firm, or any of its members, directly or indirectly, to make any such untruthful representation; that it never was aware that any such representation was made; and that it never, in any manner, acquiesced in the acts or declarations of the firm on the subject. It seems very clear, therefore, that the only case which the bank has against any one with respect to its loan is a case against the firm. If the members of the firm obtained money from it upon the false representation that its capital was greater than it really was, the bank has its appropriate action at law against them. But it has no possible equity, as against Van Nest Talmage's estate, to have the amount due to it treated as capital of the firm. The attempt thus to build up an equity which would deprive this estate of its dividend, and appropriate such dividend exclusively to this particular creditor, is far-fetched and quite hopeless. The special facts on which the supposed equity rests bear no relation to those upon which certain principles were enunciated in Adams v. Albert, 155 N. Y. 358, 49 N. E. 929. The question there of the effect of the retiring partner's acts was an open one. The facts showed that he had allowed his unliquidated interest in the old firm to be continued in the business of the new as capital. He was not, under the circumstances, permitted, upon the insolvency of the new firm, to assume the position of a firm creditor. Here the deceased partner speaks through the provisions of his will. He did not permit his interest to remain unliquidated after the 31st day of December, 1880. His estate, after that date, became a creditor, and remained such to the end. Any possible question on this head has been set at rest by a formal and decisive adjudication, binding upon all parties to the record. We need not pursue the subject further. Nor need we consider the question of the referee's jurisdiction, although we must say that the issues between the bank and the executrix would have been presented in a more orderly manner had the bank been required to file a petition, or otherwise place its allegations and claim

for relief clearly and definitely upon the record. Our conclusion upon the merits, however, is that the report with respect to this claim of the bank is erroneous, and that such claim should be disallowed.

The second question is as to the assignee's commissions. Two banks held warehouse receipts for rice pledged to them by the firm as collateral security to loans. This rice was in a rough state, and, as it stood, quite unmarketable. If sold in its then condition, it probably would not have realized enough to pay the banks. The assignee arranged with the banks that he should have the rice milled, and put in suitable condition for sale. This was done, and the result was: payment of the banks in full, and a handsome surplus for the assigned estate. The learned referee allowed the assignee a commission upon the entire amount of the sales of this rice. We think this was erroneous, and that the assignee was only entitled to a commission upon the surplus which went to his estate. Under the act (Laws 1877, c. 466, § 26, as amended by Laws 1878, c. 318, § 7), an assignee is entitled to a commission of 5 per centum only "on the whole sum which will have come into his hands." This has been expressly held to refer to the money actually received, and not to the property assigned. In re Hulburt, 89 N. Y. 259; In re Dean, 86 N. Y. 399. It clearly means the money actually received for the assigned estate. Here the assignee received for his estate but the surplus after paying the banks. The rest he received for the latter. The banks never parted with their lien, and the assignee made the sale as their agent. The facts are clear upon this point. Mr. Gillet agreed to keep the goods separate, and to act as the banks' agent. His acknowledgment of the warehouse receipts reads: "This rough rice to be milled and sold, the proceeds to be given to the Bank of America on account of the loan." It is plain that the banks never parted with their right to possession or with their lien; and that Mr. Gillet's services were twofold—First, for the banks; and, second, for the assigned estate. What he did for the former must be compensated, if at all, by them. What he did for the latter is rewarded by his commission upon the surplus which went into his estate. The case is plainly distinguishable from In re Security Life Insurance & Annuity Co., 31 Hun, 36, in the fact that there the title was in the receiver, and he sold the property solely for his estate. He did not sell the property for the mortgagee. The only relation he had to the latter was to pay off the mortgage, as required by the purchaser. The latter actually paid the receiver $125,000 for the property, upon an agreement that it should be free and clear. To make it free and clear, the receiver paid the mortgagee the $100,000 due upon his mortgage. The transaction was thus a sale of property belonging to the estate, and every dollar of the purchase money was received for the estate.

The remaining questions are as to the costs and allowances. It is objected that allowances were improperly granted, for the reason that this is a special proceeding, and that extra allowances are authorized only in actions. It is true that, with the single exception made in chapter 61 of the Laws of 1898,—which exception is inapplicable to the First and Second judicial districts,—extra allowances

434      57 NEW YORK SUPPLEMENT

and 91 New York State Reporter.      (Sup. Ct.

can only be granted in actions. But the assignment act expressly confers upon the court, in this particular special proceeding, the power to award counsel fees, as well as costs. Section 26, supra. It is immaterial whether they are called counsel fees or allowances. The substance is the same. It follows that the sums here awarded were within the authority of the special term. The apportionment of the costs and expenses of the reference was correct as to the quantum, but incorrect as to the parties against whom such apportionment was made. The costs and allowance awarded to the attorneys for the assignee were properly charged to the assigned estate. The general expenses of the proceedings were apportioned as follows: $1,742.70 was charged against all the appellants for the expenses incurred and allowance granted in the hearing and determination of their objections to the bill of the assignee's attorneys; $2,659.50 was charged to the executrix of Van Nest Talmage for expenses incurred and allowance granted in the hearing and determination of the claim of the Manhattan Company. The latter sum should now be charged to the Manhattan Company. The apportionment was correct as to the figures, but the charge should be reversed, the company now being the defeated party. As to the former, the objections of the united appellants were not made in bad faith. While we think the referee properly allowed the bill of the assignee's attorneys, yet some of the questions presented by these creditors were important, and not altogether free from difficulty. There was, at all events, no reason why they should be mulcted personally for in good faith questioning the bill as they did. It was a proper case for charging these expenses and allowances upon the assigned estate.

Our conclusion upon the whole case is that the decree should be modified by disallowing the special claim of the Manhattan Company, as against the executrix of Van Nest Talmage, and directing that she receive her full dividend upon the sum of $49,123.87, without deduction or impairment. It should be modified, too, by reducing the assignee's commission to the statutory percentage upon the surplus realized by the assigned estate from the sale of the rice pledged to the banks. It should be further modified by charging to the assigned estate the expenses apportioned to the united appellants, and by charging to the Manhattan Company the expenses apportioned to Laura A. Talmage, as executrix. including the extra allowance or counsel fee of $500; this latter allowance of $500 to be recovered by the executrix from the Manhattan Company personally. The balance of such expenses to be paid out of the Manhattan Company's dividend, and deducted therefrom by the assignee. No costs of this appeal should be allowed to the assignee, as he has been unsuccessful personally. Costs of the appeal should, however, be allowed to the executrix, recoverable from the Manhattan Company personally. Costs of the appeal should also be allowed to the other appellants, payable out of the assigned estate. All concur.