In re LOUGH et al.

(Circuit Court of Appeals, Second Circuit.   November 14, 1910.)

No. 67.

BANKRUPTCY (§ 309*)—PROVABLE DEBTS—PARTNERSHIP—CAPITAL LEFT BY DE-
CEASED PARTNER.

A testator, who at the time of his death was a partner in a firm with
his son and another, by his will provided that the capital he had in the
firm should be permitted to remain therein for five years as a loan to his
son on his payment of interest. On his death the surviving partners con-
tinued the business, agreed on the value of the decedent's interest, and
credited his executor with the amount as a loan to the firm, without objec-
tion by the legatees, paying interest thereon until their bankruptcy. *Held,*
that the interest of the testator did not remain in the new firm as cap-
ital at the risk of the business, but became an indebtedness of the firm,
which the legatees were entitled to prove as a debt against the estates of
the partnership and partners in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 309.*]

Appeal from the District Court of the United States for the South-
ern District of New York.

In the matter of Ernest St. George Lough and Robert W. Burrows,
individually and as partners as G. F. Lough & Co., bankrupts. From
an order disallowing the claims of Helen M. Lough and others as
creditors, they appeal. Reversed.

David Bennett King (W. H. Osborn, of counsel), for appellants.

Whitridge, Butler & Rice (W. P. Butler and John French, of coun-
sel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. In the year 1884 George F. Lough made
his will, article 4 of which was as follows:

"As the withdrawal of the capital I may have in the business conducted by
me and my son, Ernest St. George Lough, at the city of New York since Oc-
tober, 1884, under the firm name of G. F. Lough & Co., would, or might be of
great inconvenience to said business, I desire and direct that the capital be-
longing to me in said business at my death shall be permitted by my executors
to remain in it as a loan to my said son for a period of five years unless at
his option sooner paid off or reduced, he paying therefor lawful interest not
exceeding seven per cent. per annum."

After the making of the will, Robert W. Burrows was admitted
to the firm. In 1892 Mr. Lough died, and the only executor who
qualified under his will was his son and partner, Ernest St. George
Lough. The surviving partners continued the business under the
same firm name, agreed upon the value of the interest of Lough, Sr.,
as $93,833.97, charged that sum upon the books as due the estate and
paid interest regularly upon the same thereafter. In 1901 the account
with the estate of Lough, Sr., on the books was closed, and separate
accounts opened with his children, legatees under his will, for their
respective shares in the estate. Statements of account were rendered

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and interest paid regularly to them until the final insolvency of the firm, which was adjudicated a bankrupt October 9, 1908.

The referee and the district judge both held that the interest of Lough, Sr., remained in the firm as capital at the risk of the business, and therefore the claimants were not entitled to prove as creditors against the bankrupt estate. We cannot agree to this conclusion. At the time the will was made, the testator's interest in the firm was properly described as capital in the business, and at his death, the time when the will spoke, it was also so properly described. But the will expressly declared that it might then be loaned to Lough, Jr.; he paying lawful interest thereon.

The death of Lough, Sr., dissolved the firm, and it then became the duty of the surviving partners, Lough, Jr., and Burrows, to wind it up and pay over the amount of his interest to Lough, Jr., as executor, who might then loan it to himself individually, in accordance with the provision in the will. Whatever is done by agreement between the surviving partners and the executor is, in the absence of fraud or mistake, binding on every one. Now what the parties did was to agree that the amount of Lough, Sr.'s, interest in the firm was $93,833.97 and to charge that sum upon the books of the new firm as a loan received from his estate and not from Lough, Jr., individually. Thereafter for many years interest was regularly paid upon it as a loan, so that not only did the will decare that the amount of the testator's interest in the firm at his death might be permitted to remain as a loan to his son and partner (he being at that time the only other partner), but upon the testator's death the executor did permit it to remain, and the surviving partners did accept it as a loan to the firm.

In 1897 at the expiration of the five years fixed in the will the firm of George F. Lough & Co. would not have been wholly solvent if the indebtedness to the estate of Lough, Sr., were treated as a loan, and in 1908 it was utterly insolvent and adjudicated a bankrupt. The fact that the firm was gradually becoming insolvent and the fact that the claimants did not know what entries were made with reference to the transaction upon the firm books did not change its nature, nor did the fact that there was upon the death of Lough, Sr., no precise settlement of the firm's accounts, or that Lough, Jr., took no proceedings in the Surrogate's Court. The legatees by their conduct, past and present, have fully ratified what was done.

Reliance is placed upon the case of Adams & Co. v. Albert, 155 N. Y. 356, 49 N. E. 929, 63 Am. St. Rep. 675, in which a retired member of a firm who was found to have left his funds as capital in the business was held to be estopped from competing with a creditor of the firm after it had made an assignment for the benefit of creditors because of representations the retired partner had made to that creditor, on the strength of which he gave the firm further credits. The case has no application. The subsequent case of Matter of Talmage, 39 App. Div. 466, 469, 470, 57 N. Y. Supp. 427, 429, 430, affirmed upon the opinion of the court below 161 N. Y. 643, 57 N. E. 1126, we think entirely inconsistent with the conclusion

reached by the master and district judge. The will contained a substantially similar though fuller provision:

" * * * It is my will and desire that all sums of money which shall stand to my credit at the time of my death on the books of the said firm of Dan Talmage Sons, and on the first day of January next after my death and all my interest in said firm and its property and assets shall remain with the survivors and survivor of said firm in case they or he shall continue the business thereof for the space of five years from my decease (in case my two brothers John and Daniel should so long live), they or he to pay interest thereon at the rate of seven per cent. per annum payable quarter yearly; and at the expiration of said five years (or previously in case both my said brothers should die before that time) the sums of money and assets which shall be due to and belonging to my estate shall be withdrawn from the survivors or survivor of said firm and placed on bond and mortgage or otherwise securely invested as hereinafter mentioned. In case the survivors or survivor of said firm should, however, decline to retain said moneys and pay interest thereon as above mentioned and in case of the death of both my said brothers, then my executors shall collect and receive the money and assets belonging to my estate and invest the same as hereinafter directed and apply the interest and income arising therefrom to the use of my wife during her natural life."

It is true that the referee found as a fact in that case that the decedent's capital was left as a loan, and, no appeal having been taken from this finding, it was an adjudication binding upon the Appellate Division and the Court of Appeals. Still, it is evident that both courts agreed in the referee's conclusion; Barret, J., saying of it:

"While we think that this decision is just as binding secondarily as it is primarily, we have no doubt that it is entirely sound in either aspect."

Lough, Jr., having refused to make proof of claim in bankruptcy as executor, the legatees offered proofs individually which should have been received.

The order of the court below is reversed, with costs.